CHARLES S. KENNEDY ET AL. *v.* EAST UNION LUMBER & MANU-
FACTURING COMPANY ET AL.

[46 South., 625.]

CHANCERY PLEADING AND PRACTICE. *Pro confesso to bill. Effect of an-
other's answer and proof. Final decree.*

Where a *pro confesso* to a bill in equity is taken against one of
several defendants a final decree should not be rendered against
him where the facts developed under the issues made by the other
defendants show his non-liability, although they show one or
more of the answering defendants to be liable.

FROM the chancery court of Leflore county.

HON. PERCY BELL, Chancellor.

The East Union Lumber and Manufacturing Company and
others, appellees, were complainants in the court below; Ken-
nedy and others, appellants, were defendants there.   From a
decree in complainants' favor against Kennedy and Chenoweth,
two of the defendants, Kennedy appealed to the supreme court
and the complainants prosecuted a cross-appeal from that part
of the decree which denied them relief as against other defend-
ants.   The facts are stated in the opinion of the court.

*E. D. Stone,* for appellant.

In case the court holds that the bill was not demurrable and
that some sort of a final decree could have been entered on the
*pro confesso* taken against Kennedy, then we take the position
that the facts as shown at the hearing should have released Ken-
nedy.   Read the bill the most favorably you can for complain-
ants and you will find that the first requisite for liability is
that he must have done business as Chenoweth Lumber Com-
pany.   Then he was liable to its creditors for either one reason
or another; the first one that he had subscribed to its capital
stock and failed to pay in his stock subscription, the other that

he had never subscribed. Now did Kennedy ever do business as Chenoweth Lumber Company? The evidence is overwhelming that he did not. That ends his case, if true. No one charges that he did, and the answer of Chenoweth and Gleason says he did not, and this answer goes into details and says that Chenoweth and Gleason did the business and were the only subscribers to the stock of the corporation. The only evidence in the record on the subject is contained in the minutes of the Chenoweth Lumber Company by which it appears that Hammond and Kennedy went to the first meeting of stockholders, the stock list was exhibited and read showing Gleason and Chenoweth to be the only stockholders. This meeting elected Kennedy and Hammond directors and adopted by-laws. The directors met and elected officers. One week later the minutes show the resignation of both Hammond and Kennedy as directors and further reciting the fact that they never subscribed to the stock and then refused, etc. These meetings were held on the 18th and 25th of June, 1904. The accounts filed herein were made in February and March and April, 1906.

Final decree cannot be rendered on *pro confesso* unless a case is made out by the bill. See *Garland* v. *Hall,* 13 Smed. & M., 79. "Exceptions were filed to the answer of Samuel Garland, and sustained to some extent. He was directed to answer over, but failed to do so, and a *pro confesso* order was thereupon taken against him. This order could not justify a decree against him, unless a state of case is made out by the bill, which rendered him liable in this mode of proceeding. We have endeavored to show that this was not done, and the demurrer was a full answer to the whole bill. To hold that the court of chancery might render a decree in this case would be to enlarge its jurisdiction beyond any known limit."

This case was cited and followed exactly in *George* v. *Solomon,* 71 Miss., 173, 14 South., 531, where the court said: "We are unable to discover any right, legal or equitable, stated in complainant's pleading entitling him to relief. The demurrer

to the original bill should have been sustained.   If no defense
had been made by the defendant to the bill of complaint, a de-
cree *pro confesso* thereon would not have warranted a final de-
cree against either of the defendants, for, though a decree
*pro confesso* may be entered against a defendant, no final decree
can be given thereon unless the bill confessed states a case for
relief."

Even though the court should hold that the bill states a case,
yet if the facts developed on the trial of the issue, raised by
the answer of another defendant, show the complainant not
to be entitled to the relief prayed for in the bill, it should be
dismissed against all of the defendants, even though one defend-
ant has suffered a *pro confesso* to be taken against himself.

In *Minor* v. *Stewart,* 2 How. (Miss.), 912, a suit by Minor
against Stewart and Magruder for slaves, wherein Magruder de-
fended and *pro confesso* was taken against Stewart, this court
used the following language: "The deduction from these facts
is conclusive against the right of the appellant to the posses-
sion of the specific slaves set forth in the bill. . . . The
only additional matter material to consider is the fact of the *pro
confesso* against Stewart.   If Stewart was the sole defendant,
or his rights depended upon distinct facts, his default in ap-
pearing and answering would have been an admission of the
facts charged in the bill.   But it would be unwarrantable to
hold, that because one of the defendants had made default, the
plaintiff should have a decree even against him, when the court
is satisfied from the facts presented by the others, that the plain-
tiff is not entitled to a decree."

In *Hargrove* v. *Martin,* 6 Smed. & M., 61, this court
said: "Taking a case for confessed in equity, entitles the com-
plainant to a decree only against the party as to whom the bill
has been taken for confessed; not against the others; and if
the defendant against whom *pro confesso* is taken disprove the
bill, the whole will be dismissed."

In *Kelly* v. *Brooks,* 57 Miss., 225, this court held in a case

where *pro confesso* was taken against Brooks and afterwards set aside and answer permitted to be filed that "even if the *pro confesso* had not been set aside no final decree could have been made against Brooks, if upon the answer filed and proof taken by his codefendant, it had been eventually demonstrated that the complainant was entitled to no relief as has been held in several cases in this court."

In *Soria* v. *Stowe,* 66 Miss., 615, 6 South., 317, a suit for land against several defendants, this court said: "Appellant is not entitled to relief as against Mrs. Eistetter, because she failed to show title in herself to the lands in controversy, her title having been put in issue by a denial in the answer of this defendant. Nor was she entitled to relief as against Hunt, against whom a *pro confesso* was taken, because on the whole record she is shown to be the owner of the land. Though Hunt suffered a *pro confesso* to be taken, still, if on the issue between complainant and his codefendant complainant is shown not to be entitled to any decree against him, no such final decree can be made. *Brooks* v. *Kelly,* 57 Miss., 225; *Minor* y. *Stewart,* 2 How. (Miss.), 912; *Hargrove* v. *Martin,* 6 Smed. & M., 61."

In *Simpson* v. *Smith,* 75 Miss., 505, this court held as follows: "Notwithstanding the decree *pro confesso,* the final decree and the failure of the appellant to appear in the court below, if, on the whole case as presented here, it appears that the appellee was not entitled to relief, the decree must be set aside."

*S. R. Coleman,* for appellees and cross-appellants.

Chenoweth, Gleason and Kennedy by reason of the fact that they never complied with the charter of incorporation, as shown by their minutes became general partners, and as such were individually liable as members of the firm composing the Chenoweth Lumber Company. Cook on Stock and Stockholders and Corporations (2d ed.), sec. 233, and note 5, and sec. 508.

Any participation by an act which indicates an intent to become a member renders such participant liable as a member. *Ibid,* sec. 507, note 3.

The minutes show that both Kennedy and Hammond were elected directors at the time of the attempted organization, and while it is true that they resigned as directors at a subsequent meeting because they had no stock, still the minutes do not show that they withdrew from the partnership and no notice of withdrawal was ever shown. It is not necessary that certificates of stock be issued in order to constitute partnership. *Ibid*, sec. 597, note 3 and cases cited.

*McWillie & Thompson*, on the same side.

The appellant, Kennedy, having failed to plead, answer or demur to the bill, a *pro confesso* decree was duly and properly entered against him. The other defendants, Chenoweth, Hammond and Gleason demurred to the bill and their demurrer having been overruled they answered and the cause went to trial on the merits. The final decree shows that the bill was dismissed as to Gleason on motion of the complainants, and that after hearing the evidence the court dismissed it as to Hammond, and awarded the complainants a decree only against Chenoweth and the appellant Kennedy. From this decree Kennedy alone has appealed.

It is claimed by the appellant, Kennedy, that the evidence does not sustain a decree against him, and that he can claim the benefit of all such evidence introduced by his co-defendants as shows an absence of all right in the complainant.

In his reference to authority on this subject the learned counsel for appellant does not seem to have observed the underlying principles on which the cases cited are based. The rule invoked applies only in cases where the evidence develops such absence of right in the complainant as necessitates the dismissal of his bill as to all the defendants, a state of things which does not exist in the cause under consideration. There is no judicial sanction for the idea that where a *pro confesso* has been taken against one defendant other defendants against whom none has been taken can make a defense for him although they can make no sufficient defense for themselves. Only where it appears that

the complainant had no right as to any of the defendants is the rule of practice applicable. Were it otherwise no matter how negligent he may have been, the delinquent without concerning himself in the least to have the *pro confesso* set aside could make his defense through co-defendants thus giving to such co-defendants a representative character unknown to the law and most prejudicial to its due administration. To so hold would be to encourage laxity and destroy the effect of the *pro confesso* as preventive of indifference, carelessness and procrastination all of which are included in the term "negligence."

In all of the cases cited on behalf of the appellant, viz.: *Minor* v. *Stewart,* 2 How. (Miss.), 212; *Hargrove* v. *Martin,* 6 Smed. & M., 61; *Kelly* v. *Brooks,* 57 Miss., 225; *Soria* v. *Stowe,* 66 Miss., 615, 6 South., 317; *Simpson* v. *Smith,* 75 Miss., 505, 22 South., 805, the *pro confesso* was set aside because of such entire absence of right of title in the complainant that he was not entitled to relief against any one, as where he relied on a void tax-title, or a mistaken view of the law as to the existence of a lien, etc.

In the case before us the court decreed and properly decreed against one of the defendants on the evidence, decreed in favor of one on the evidence, dismissed the bill as to another on complainants' motion, and decreed against the appellant, presumably on the *pro confesso,* as appellant had raised no issue by answer and the case was not one in which the complainants were entitled to relief nor the appellant to avail of the defense made by his co-defendants. The point we make is an interesting one and the fact of its conservation through all the decisions mentioned suggests that the court had it in mind though there was no occasion in the cases decided to give emphasis to it. There is certainly a wide distinction between those cases where the complainant breaks down as to all of the defendants by reason of his own entire absence of right of title and those where on a disputed question of fact he recovers as to some of the defendants and fails to recover as to others.

*Pollard & Hamner,* for cross-appellees.

Hammond was neither a stockholder in the corporation, the Chenoweth Lumber Company, nor a partner in the business. He was not a stockholder for he never subscribed anything to the capital stock, which was all of the money invested. He had refused to subscribe anything. He had been elected a director but resigned for the very reason that he was not a stockholder. He did nothing to make any one believe that he was a stockholder; he didn't hold himself out as a stockholder. It appears specifically "that neither of them (meaning Hammond and Kennedy) has ever subscribed in writing to the capital stock and both of them now refuse to subscribe to any part of said capital stock," etc. There is no evidence that he ever owned stock and in his sworn answer filed, appears these words: "He denies that he was a stockholder in the Chenoweth Lumber Company and further respondent has no knowledge of the business connected with the Chenoweth Lumber Company and never had any connection therein in any way; never held himself out as a stockholder or a member of the partnership doing business under that name. Respondent has no knowledge as to whether any portion of the capital stock was subscribed, or if subscribed, whether any portion was ever paid by any of the stockholders." This is his sworn answer to an unsworn bill; no evidence has been introduced to contradict it and it is therefore evidence and the only evidence on the point. *Davis* v. *Hart,* 66 Miss., 632, 6 South., 318.

He was in no sense a stockholder and even if he had been one originally, he resigned as a director on June 25, 1904, for the reason that he had no stock and could not be a stockholder. The account sued on was not made until February 27, 1906, nearly two years after Hammond resigned and any suit against him would have then been barred. Code 1892, § 844; Code 1906, § 909. He could not have been liable as a stockholder.

Was Hammond then liable as a director? Whether this concern, the Chenoweth Lumber Company was a partnership or a

corporation, minutes of its proceedings were kept and the min-
utes show that all of the stock in the business was represented
in person by G. W. Chenoweth, 25 shares $2,500, T. A. Glea-
son, 25 shares $2,500. There is no other evidence on this
point except Hammond's sworn answer. If Hammond had no
money in the business, he must have held himself out to cross-
appellants as a partner to render himself liable. There is no
evidence to show that they ever heard of Hammond; there is no
evidence of his connection with the business in any capacity and
his sworn answer remains uncontradicted. The conclusion is
inevitable that Hammond never at any time had anything what-
ever to do with Chenoweth Lumber Company or any business of
the Chenoweth Lumber Company, or that he induced cross-ap-
pellants to do any business with Chenoweth Lumber Company
or with himself. He had no money invested and there is no
proof to show that any credit was extended to cross-appellants
by reason of his alleged connection with Chenoweth Lumber
Company. A man cannot be held liable for the debts of a busi-
ness with which he had no connection whatever. The minutes
of the Chenoweth Lumber Company are the sole evidence and
they fairly crucify cross-appellants' claim.

Argued orally by *E. D. Stone,* for appellant.

MAYES, J., delivered the opinion of the court.

On the 22d day of August, 1906, the East Union Lumber &
Manufacturing Company and others filed a bill in the chancery
court of Leflore county against the Chenoweth Lumber Com-
pany and C. W. Chenoweth, J. D. C. Hammond, C. S. Ken-
nedy, and T. A. Gleason. The bill alleges that the above-named
persons obtained a charter of incorporation under the laws of
this state, incorporating themselves as the Chenoweth Lumber
Company, to be domiciled at Greenwood, Miss., in Leflore
county. The authorized capital stock of the corporation was
fixed by the charter at $20,000, in shares of $100 each. The
charter authorized the incorporators to begin business after $5,-

000 of the capital stock had been subscribed. The bill further alleges that the Chenoweth Lumber Company commenced business under that name and incurred liabilities to the complainants in the sum of $710.11. It is further alleged that complainants are unable to state whether or not the $5,000 required to be subscribed before commencing business was subscribed; but it is charged that, if any amount of the capital stock was subscribed, no amount was ever paid into said corporation on the subscriptions, but notwithstanding this the defendants Chenoweth, Hammond, Kennedy, and Gleason commenced business under this charter without having subscribed or paid in any part of the capital stock. It is further alleged that complainants were in ignorance of this fact, and it is further alleged that their action was a fraud in law, and rendered them liable as individuals for such sum as they may have subscribed to the capital stock, if any; and, if they had never subscribed, then they were liable as partners jointly and severally. It is further alleged in the bill of complaint that since the debt was contracted the corporation has become insolvent and gone out of business, and the prayer of the bill is that Chenoweth, Hammond, Kennedy, and Gleason be compelled to discover what amount they may have subscribed to the capital stock, if any, and what amount they paid on their subscription, if any, and that they be required to pay any amount subscribed and not paid, and that same be made liable to debts of complainants, and, if it be found that no subscription was ever made by the parties, then the prayer is that the defendants be held liable as partners. After the filing of this bill it was joined in by other creditors, to whom defendants were indebted. The charter is made an exhibit to the bill, and it shows that C. W. Chenoweth, J. D. C. Hammond, C. S. Kennedy, and T. A. Gleason were the incorporators, and the charter was filed for record on July 22, 1904. All of the defendants answered but C. S. Kennedy, and on his failure to in any way answer the bill a *pro confesso* was taken as to him. All the other defendants offered proof under their answers, and on final hearing of the cause the bill was dismissed as to T. A.

Gleason and J. D. C. Hammond, and the court further decreed that the complainants recover from C. W. Chenoweth and C. S. Kennedy, the other defendants, the sum sued for. From this decree C. S. Kennedy, who did not answer the bill and against whom a *pro confesso* was taken, appealed to this court, claiming that the proof offered by the answering codefendants proved his nonliability, and hence the decree final against him was wrong, even though he had allowed a *pro confesso* to be taken.

In view of the record in this case, we think that the decree against C. S. Kennedy should not have been rendered. It shows conclusively that there was no liability on the part of C. S. Kennedy to the complainants; and, this being the case, even though he had suffered a decree *pro confesso* to be taken against him, there should not have been any judgment final entered on this *pro confesso*. There was a direct connection between the defense of Hammond and Kennedy. In making his defense Hammond also proved conclusively that there was no liability on the part of Kennedy; and, this being the case, no decree should have been entered against Kennedy. It is not every case where the defendant suffers a *pro confesso* to be taken that will warrant a final judgment. A final judgment can never be taken where there are other codefendants making defense to the bill of complaint, and in making their proof they also disprove liability on the part of their codefendants not answering. In such case no judgment should be taken against the defaulting defendant. This is the uniform chancery practice followed in this state and elsewhere. In the case of *Simpson* v. *Smith,* 75 Miss., 505, 22 South., 805, the court said: "Notwithstanding the decree *pro confesso,* the final decree, and the failure of appellant to appear in the court below, if, on the whole case as presented here, it appears that the appellee was not entitled to relief, the decree must be set aside." *Minor* v. *Stewart,* 2 How. (Miss.), 912; *Kelly* v. *Brooks,* 57 Miss., 225; *Hargrove* v. *Martin,* 6 Smed. & M., 61; *Soria* v. *Stone,* 66 Miss., 615, 6 South., 317.

It is argued by the appellees, however, that the authorities

above cited only apply to a case where the complainant is not entitled to relief against any of the defendants. Appellees contend that, if the facts warrant a judgment against one or more of the answering defendants, then a defendant who has suffered a *pro confesso* to be taken against him cannot avail of the rule, even though the facts developed under the issue made by the other defendants prove his nonliability. There is no sound reason for such a distinction as is attempted to be made, and no authority for it that we can find. A judgment should be entered according to the very right of the cause as shown by the facts.

The cause is reversed as to C. S. Kennedy alone, and affirmed in all other respects.

*Reversed.*